UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ADVANCED PROTECTION
TECHNOLOGIES, INC., a Florida
corporation,

        Plaintiff,

v.                                          Case No.  8:04-cv-161-T-24 MAP

SQUARE D COMPANY, a Delaware
corporation, and EFI ELECTRONICS
CORPORATION, a Delaware corporation,

        Defendants.

_____/

## ORDER

       This cause comes before the Court on Defendants' Motion for Summary Judgment.

(Doc. No. 54).  Plaintiff opposes this motion.  (Doc. No. 60).

## I.  Background

       Plaintiff Advanced Protection Technologies, Inc. ("APT") alleges the following in its

Second Amended Complaint (Doc. No. 59): Plaintiff is engaged in the business of designing,

manufacturing, and marketing transient voltage surge suppression ("TVSS") equipment.  TVSS

equipment is designed to protect sensitive electronic equipment plugged into or connected to the

wiring of a facility from lightning and other electrical transients.  Defendant Square D Company

("SQD"), is one of America's best-known brands of electrical distribution and control

equipment.

       In 1995, senior management of Plaintiff and SQD met and agreed to proceed in a joint

venture between the two companies.  The joint venture involved incorporating Plaintiff's TVSS

equipment into SQD's equipment.  Initially, the resulting TVSS units were identified as

SQD/APT products, so that SQD could enjoy the benefit of Plaintiff's existing reputation in the industry and SQD could obtain immediate access to engineers that had been specifying Plaintiff's products and jobs where Plaintiff's products were specified.  In 1998, Plaintiff and SQD negotiated changes to the joint venture, which included creating an SQD branded product and line of TVSS equipment.   Plaintiff and SQD also entered into a confidentiality agreement, in which they agreed that they would not utilize or disclose each other's proprietary information.

In early 1999, without Plaintiff's knowledge, SQD began evaluating the potential purchase of Defendant EFI Electronics Corporation ("EFI"), a manufacturer of surge protection products and Plaintiff's competitor.  The purpose of such purchase was to replace Plaintiff. SQD later decided to purchase EFI, but before making its offer to EFI, SQD met with Plaintiff to complete negotiations on the Brand Label Agreement in order to subsume Plaintiff's identity into SQD.  This assured SQD of an uninterrupted source of product and gave SQD the time to complete the process of subsuming Plaintiff's identity into SQD and prepare EFI to replace Plaintiff.

In March of 2000, SQD acquired EFI.  Thereafter, SQD began diverting Plaintiff's technical, financial, and marketing information to EFI.   EFI and SQD created a project known as "Black Diamond" for the purpose of utilizing Plaintiff's technical, financial, and marketing information.  In late 2002, once EFI was in a position to begin manufacturing and marketing the TVSS units based on Plaintiff's information supplied to it by SQD, SQD abruptly informed Plaintiff that EFI would begin manufacturing and selling the TVSS units that were previously produced by Plaintiff and that their joint venture was terminated.  Thereafter, SQD misrepresented to customers who placed orders to purchase TVSS units that the units being

purchased were the same units that had been manufactured by Plaintiff (when, in fact, the units were being manufactured by EFI).  This misrepresentation allowed SQD (1) to substitute the EFI product on millions of dollars worth of previously quoted jobs that specified Plaintiff's product, (2) to take advantage of the fact that many engineers were loyal specifiers of Plaintiff's technology and thought that they were still getting the same product, and (3) to take advantage of the unique design and customer goodwill earned with Plaintiff's TVSS unit.

Plaintiff filed suit against SQD and EFI, asserting the following claims: (1) Count I against SQD: breach of fiduciary duties of a joint venturer; (2) Count II against SQD: violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"); (3) Count III against SQD: breach of the confidentiality agreement; (4) Count IV against EFI: unjust enrichment; (5) Count V against EFI: interference with a business advantage; (6) Count VI against SQD: estoppel; (7) Count VII against SQD and EFI: unfair competition; (8) Count VIII against SQD: violation of the covenant of good faith and fair dealing; (9) Count IX against SQD: breach of contract.

**II.  Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue

for trial.  Id. at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  See Samples on behalf of Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. See Augusta Iron & Steel Works v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988).

## III.  Defendants' Motion for Summary Judgment

Defendants make three arguments in support of their motion for summary judgment. First, Defendants argue that they are entitled to summary judgment on Counts I (breach of fiduciary duties of a joint venturer) and IV (unjust enrichment), and partial summary judgment on Counts III (breach of the confidentiality agreement) and V (interference with a business advantage), because no joint venture existed.  Next, Defendants argue that they are entitled to summary judgment on Count I (breach of fiduciary duties of a joint venturer), because there was not a fiduciary relationship between Plaintiff and SQD.  Finally, Defendants argue that they are entitled to summary judgment on Count II (FDUTPA), because Plaintiff cannot show that SQD violated FDUTPA.  Accordingly, the Court will address each argument.

### A.  Joint Venture

Defendants argue that they are entitled to summary judgment on Counts I (breach of

fiduciary duties of a joint venturer) and IV (unjust enrichment), and partial summary judgment on Counts III (breach of the confidentiality agreement) and V (interference with a business advantage), because no joint venture existed.  In support of their contention that no joint venture existed, Defendants argue that: (1) there was no agreement between Plaintiff and SQD to share in the profits and losses of the alleged joint venture; and (2) the statute of frauds bars Plaintiff's claim that a joint venture existed.  Accordingly, the Court will address each argument.

### 1.  Profits and Losses

A joint venture is a "legal relationship resulting from an agreement between two or more persons to engage in an enterprise of limited scope and duration."  Kislak v. Kreedian, 95 So. 2d 510, 514 (Fla. 1957).  "Joint venture agreements are not required to be in writing."  Atkins v. Topp Telecomm, Inc., 873 So. 2d 397, 399 (Fla. 4th DCA 2004)(citation omitted).  "The essential elements of a joint venture are: (1) a community of interest in the performance of a common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits and (5) a duty to share in any losses which may be sustained."  Id. (citations omitted).  A joint venture will not be found to exist if any element is missing.  See Williams v. Obstfeld, 314 F.3d 1270, 1276 (11th Cir. 2002)(citations omitted).

Defendants contend that Plaintiff cannot show that a joint venture existed between Plaintiff and SQD, because Plaintiff cannot show that it had a right to share in the profits and a duty to share in the losses of the alleged joint venture.  See Kislak, 95 So. 2d at 515 (stating that there must be an agreement to share jointly on some agreed basis in not only profits but also losses).  In support of their contention, Defendants cite to the following portion of the deposition of Thomas Chapman, Jr., President of Plaintiff:

Q:      . . . [D]o you also assert that there was an understanding about the division
        of profits –
A:      Yes.
Q:      – that might accrue to the joint venture?
A:      Yes.
Q:      What was the understanding?
A:      I've already explained that to you.  Their requirement was 30- -- 30-
        percent margin; in other words, 30 percent higher than the sales price of
        [Plaintiff's] product to Square D.  That was their portion – that was their
        portion of the profits.  Our portion was the difference from our
        manufacturing costs, our marketing expense, and the price that we sell to
        Square D.  And they were basically the same.

                            *        *        *

Q:      In 1995 at the time you assert this agreement came into being, was there
        an agreement for the division of profits if the margins obtained by Square
        D or the margins obtained by [Plaintiff] exceeded some target?
A:      No.
Q:      In 1995, was there an agreement as to how Square D and [Plaintiff] would
        share losses that might be occasioned as a consequence of the conduct of
        the business of the purported joint venture?
A.      There was never a discussion about losses, because I – I really can't
        picture a situation where there would – where there would be losses.
Q:      Was [Plaintiff] obligated to reimburse Square D in the event it suffered
        any losses under the purported joint venture?
A:      There was no losses for them to suffer. [Plaintiff] took all of the financial
        risks and fronted the money, other than some internal overhead for
        employees that may have been involved in approving decisions that we
        made.  The only way there could have been losses is if the product were
        sold for less than cost, which would be stupid to do.  I can't – I can't see
        any situations where Square D would have had a loss.

(Doc. No. 55, Ex. C, p. 79-81).

Plaintiff responds that there was an agreement to share in the profits of the alleged joint

venture; specifically, SQD would receive a 30% return on transactions through the joint venture

(as described above).  Furthermore, Plaintiff cites to the affidavit of Andrew Malcolm, Vice

President of Sales for Plaintiff, in which Malcolm states:

        [Plaintiff] jointly participated with SQD to assure SQD's goal of thirty (30%)

percent margin on sale of the product was met, throughout the course of the
relationship.  Each transaction was priced separately depending on the
competitive situation.  Often, to meet competitive price levels, [Plaintiff] would
reduce [its] margins in order to win a deal.  In some instances, . . . SQD and
[Plaintiff] jointly reviewed and realigned profits resulting in [Plaintiff] writing a
check back to SQD to bring their margins back in line with their stated goal of
thirty (30%) percent.

(Doc. No. 60, Ex. 5, ¶ 5).

Upon review of the submission of the parties, the Court agrees with Defendants that

Plaintiff has not shown that a joint venture existed.  Even assuming, without deciding, that

Plaintiff has raised a genuine issue of material fact regarding whether there was an agreement to

share in the profits of the alleged joint venture, Plaintiff has not shown that it and SQD had an

agreement to share in the losses of the alleged joint venture.  This conclusion is supported by

Chapman's deposition testimony that there was never a discussion about losses.[1]  As such, the

Court agrees with Defendants that Plaintiff cannot show that a joint venture existed between it

and SQD.

---

[1]To the extent that Plaintiff argues that a joint venture may exist even if the parties never
expressly agreed on the precise division of profits or losses, because the law will imply an equal
share of profits and losses, the Court rejects this argument under the facts of this case.  First,
Plaintiff has not shown that it and SQD ever discussed the issue of losses or that Plaintiff agreed
to share in the losses should they occur.  Furthermore, this is not a case in which the parties
agreed to share in the losses of a joint venture should they occur, but they merely did not agree
as to the precise division of the loss that would be borne by each party.  Instead, there has been
no showing, nor has Plaintiff even argued, that it and SQD had an agreement to share in the
losses of the joint venture.

Second, in the cases that imply a duty to share in the losses, a court must first find that
there exists "a situation where one party supplies the labor, experience and skill, and the other
the necessary capital since in the event of a loss, the party supplying the knowhow would have
exercised his skill in vain and the party supplying the capital investment would have suffered a
diminishment thereof."  Florida Tomato Packers, Inc. v. Wilson, 296 So. 2d 536, 539 (Fla. 3d
DCA 1974)(citation omitted).  Such is not the situation before this Court.

### 2.  Statute of Frauds

Even if this Court found that Plaintiff could show that there was an agreement between Plaintiff and SQD to share the profits and losses of the alleged joint venture, the Court would still find that Plaintiff cannot show that an enforceable joint venture existed, because it is barred by the statute of frauds.  It is undisputed that the alleged joint venture was created by an oral agreement.  Furthermore, Chapman stated in his deposition that Plaintiff and SQD agreed that the joint venture would be extremely long-term and that it was going to take many years to build and grow the business.  (Doc. No. 55, Ex. C, p. 78-79).

"Under the statute of frauds, any agreement that is not to be performed within the space of one year from its making must be reduced to writing in order to be enforceable."  Rubenstein v. Primedica Healthcare, Inc., 755 So. 2d 746, 748 (Fla. 4th DCA 2000)(citations omitted).  In order to determine whether the statute of frauds bars enforcement of an oral agreement on the ground that it cannot be performed within one year, the Court must look to the intent of the parties.  See Khawly v. Reboul, 488 So. 2d 856, 858 (Fla. 3d DCA 1986); Yates v. Ball, 181 So. 341, 344 (Fla. 1937).  Since Plaintiff's President stated in his deposition that Plaintiff and SQD agreed that the joint venture would be extremely long-term and that it was going to take many years to build and grow the business, implicit in this testimony is the assertion that it was the intent of the parties that the alleged joint venture would last for more than one year.  As such, the Court finds that Plaintiff cannot show that an enforceable joint venture existed, because it is barred by the statute of frauds.[2]

---

[2]The Court notes that Plaintiff argues that (1) the statute of frauds only limits claims based upon a joint venture that are based on conduct after termination of the joint venture by one of the parties, and (2) Florida law provides a remedy to protect joint venturers from breaches of

### 3.  Effect of Finding that No Joint Venture Existed

Defendants argue that they are entitled to summary judgment on Counts I (breach of fiduciary duties of a joint venturer) and IV (unjust enrichment), and partial summary judgment on Counts III (breach of the confidentiality agreement) and V (interference with a business advantage), because no joint venture existed.  Accordingly, the Court will address each count.

### a.  Count I: Breach of Fiduciary Duties of a Joint Venturer

SQD argues that it is entitled to summary judgment on Count I.  Since the Court has found that Plaintiff cannot establish that a joint venture existed, it follows that Plaintiff cannot succeed on a claim of breach of fiduciary duties of a joint venturer.  As such, the Court grants summary judgment in favor of SQD on Count I.

### b.  Count IV: Unjust Enrichment

EFI argues that it is entitled to summary judgment on Count IV.  Plaintiff responds that a finding that Plaintiff cannot establish that a joint venture existed will not affect its unjust

---

an oral joint venture agreement prior to the termination of the joint venture.  (Doc. No. 60, p.15).
However, the cases cited by Plaintiff do not support these assertions.

Plaintiff cites Khawly v. Reboul, 488 So. 2d 856, 859 (Fla. 3d DCA 1986), in support of
its argument; however, this case is not on point, since the court found that the statute of frauds
barred the plaintiff's claim for breach of an oral agreement to go into business together.
Likewise, Plaintiff's reliance on Florida Tomato Packers, Inc. v. Wilson, 296 So. 2d 536 (Fla. 3d
DCA 1974), is misplaced, because the statute of frauds was not an issue raised in that case.
Similarly, Russell v. Thielen, 82 So. 2d 143 (Fla. 1955), is distinguishable, because the court
found that the statute of frauds did not bar a joint venture to develop and sell real estate as long
as there was no provision in the oral joint venture agreement to transfer specific land from one
party to another.  The parties in Russell did not raise the issue of whether the statute of frauds
barred the oral agreement because it could not be performed within one year.  Plaintiff has failed
to cite a case in which the court found that Florida law provided a remedy to protect a joint
venturer from breaches prior to the termination of the joint venture, even though the joint venture
could not be enforced due to the statute of frauds.

enrichment claim, because EFI's liability for unjust enrichment is not dependent on the existence of a joint venture between Plaintiff and SQD.  The Court agrees.

In order to succeed on its unjust enrichment claim, Plaintiff must show that (1) a benefit was conferred upon EFI, (2) EFI either requested the benefit or knowingly and voluntarily accepted it, (3) that a benefit flowed to EFI, and (4) under the circumstances, it would be inequitable for EFI to retain the benefit without paying the value thereof.  See W.R. Townsend Contracting, Inc. v. Jensen Civil Construction, Inc., 728 So. 2d 297, 303 (Fla. 1st DCA 1999)(citations omitted).  In its Second Amended Complaint, Plaintiff alleges EFI received benefits due to Plaintiff's performance of its obligations under the alleged joint venture agreement between Plaintiff and SQD.  While the Court has found that Plaintiff cannot establish that a joint venture existed, that does not necessarily affect Plaintiff's ability to show that Plaintiff conferred a benefit upon EFI that EFI either requested or knowingly and voluntarily accepted, and that under the circumstances, it would be inequitable for EFI to retain the benefit without paying the value thereof.  As such, the Court rejects EFI's argument that it is entitled to summary judgment on Plaintiff's unjust enrichment claim because Plaintiff cannot establish that a joint venture existed.[3]

### c.  Count III: Breach of Confidentiality Agreement

SQD argues that it is entitled to partial summary judgment on Count III.  In Count III, Plaintiff asserts a claim against SQD for breaching the parties' written confidentiality agreement.

---

[3]The Court, however, expresses no opinion regarding whether there is a genuine issue of material fact as to whether Plaintiff has shown that EFI has been unjustly enriched, since Defendants did not raise that issue in their motion for summary judgment.  The only issue raised with regards to Plaintiff's unjust enrichment claim is whether it could remain if the Court found that Plaintiff could not establish that a joint venture existed.

It is unclear why SQD believes that this claim is affected by the Court's finding that Plaintiff cannot establish that a joint venture existed.  Since Defendants have not shown how Count III is affected by the Court's finding that Plaintiff cannot establish that a joint venture existed, the Court denies Defendants' motion for partial summary judgment on this claim.

### d.  Count V: Interference with a Business Advantage

EFI argues that it is entitled to partial summary judgment on Count V.  In order to succeed on a claim for interference with a business relationship against EFI, Plaintiff must show: (1) the existence of a business relationship between Plaintiff and SQD that affords Plaintiff existing or prospective legal rights; (2) EFI's knowledge of the business relationship between Plaintiff and SQD; (3) EFI's intentional and unjustified interference with the relationship; and (4) damage to Plaintiff.  See Dwight v. Tobin, 947 F.2d 455, 460 (11th Cir. 1991)(citation omitted). EFI argues that since the statute of frauds prohibits Plaintiff from showing that a joint venture existed, Plaintiff cannot show that there was a business relationship between Plaintiff and SQD that afforded Plaintiff existing or prospective legal rights.  See id. (stating that because the alleged partnership agreement was unenforceable due to the statute of frauds, it could not afford legal or contractual rights).

Plaintiff responds that with regards to the first element, it need only show that a business relationship existed, even if it was not evidenced by an enforceable contract.  See Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985).  As such, Plaintiff argues that even if the joint venture agreement is unenforceable due to the statute of frauds, the statute of frauds will not bar a claim for tortious interference.  Plaintiff cites Viscito v. Fred S. Carbon Co., Inc., 717 So. 2d 586 (Fla. 4th DCA 1998), in support of its argument.  Plaintiff's reliance on Viscito,

11

however, is misplaced.

In <u>Viscito</u>, the business relationship that was allegedly tortiously interfered with was not a relationship that was unenforceable due to the statute of frauds.  <u>See</u> <u>id.</u> at 587.  Instead, in <u>Viscito</u>, the plaintiff entered into an oral agreement with the defendant in which the defendant agreed to provide the plaintiff with exclusive distributorship rights to sell and distribute its waffle mix, and in return, the plaintiff agreed to obtain customers to buy the waffle mix.  <u>See</u> <u>id.</u> at 586-87.  The plaintiff sued the defendant for breach of the oral agreement and for tortious interference with its relationship with its customers.  <u>See</u> <u>id.</u> at 587.  The court found that the plaintiff and the defendant's oral agreement was unenforceable under the statute of frauds because it was intended to last for more than one year.  <u>See</u> <u>id.</u>  However, the plaintiff was permitted to proceed on its claim that the defendant tortiously interfered with the plaintiff's relationship *with its customers*.  <u>See</u> <u>id.</u>  Unlike <u>Viscito</u>, the business relationship that was allegedly tortiously interfered with in the instant case (i.e., the relationship between Plaintiff and SQD) is a relationship that is unenforceable due to the statute of frauds.

Thus, as stated above, since the statute of frauds bars enforcement of the alleged joint venture in the instant case, the joint venture could not afford Plaintiff legal or contractual rights. As such, the Court finds that EFI is entitled to partial summary judgment on this claim to the extent that Plaintiff claims that EFI tortiously interfered with Plaintiff and SQD's alleged joint venture relationship.

### B.  Fiduciary Relationship

Next, SQD argues that it is entitled to summary judgment on Count I (breach of fiduciary duties of a joint venturer), because there was not a fiduciary relationship between Plaintiff and

SQD.  Plaintiff argues that joint venturers owe a fiduciary duty to one another.  The Court has already found that Plaintiff cannot show that a joint venture existed between Plaintiff and SQD, and as such, Plaintiff has not shown that a fiduciary relationship existed between Plaintiff and SQD.  Therefore, the Court grants summary judgment in favor of SQD on Count I.

### C.  FDUTPA

Next, SQD argues that it is entitled to summary judgment on Count II (FDUTPA), because Plaintiff cannot show that SQD violated FDUTPA.  In support of this contention, SQD argues that: (1) Plaintiff cannot recover for conduct occurring before July 1, 2001 (the date that FDUTPA was amended); and (2) Plaintiff cannot show that SQD violated FDUTPA on or after July 1, 2001.

Prior to July 1, 2001, FDUTPA provided that "[i]n any individual action brought by a *consumer* who has suffered a loss as a result of a violation of this part, such *consumer* may recover actual damages, plus attorney's fees and court costs. "  Fla. Stat. § 501.211(2) (emphasis added).  However, FDUTPA was amended on July 1, 2001, and the amendment replaced the word "consumer" with the word "person."  The current version of FDUTPA provides that "[i]n any action brought by a *person* who has suffered a loss as a result of a violation of this part, such *person* may recover actual damages, plus attorney's fees and court costs."  Fla. Stat. § 501.211(2) (emphasis added).  Courts have found that this amendment demonstrates a clear legislative intent to allow a broader base of complainants who have been injured by violations of FDUTPA to seek damages.  See Gritzke v. M.R.A. Holding, LLC, No. 4:01CV495-RH, 2002 WL 32107540, at * 4 (N.D. Fla. Mar. 15, 2002); Niles Audio Corp. v. OEM Systems Co., Inc., 174 F. Supp.2d 1315, 1319-20 (S.D. Fla. 2001).

## 1.  FDUTPA Claims Accruing Prior to July 1, 2001

Defendants are correct that the amendment to FDUTPA cannot be retroactively applied to allow Plaintiff, who is not a consumer, to assert FDUPTA claims that accrued prior to July 1, 2001.  See Guyana Telephone & Telegraph Co., Ltd. v.  Melbourne International Communications, Ltd., 329 F.3d 1241, 1247 (11th Cir. 2003).  As such, the Court grants SQD's motion for summary judgment for any FDUTPA claims that accrued prior to July 1, 2001.

## 2.  FDUTPA Claims Accruing on July 1, 2001 and Thereafter

Florida Statute § 501.204 provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  "The concept of 'unfair or deceptive acts' is not clearly defined, but some cases have suggested that the conduct must offend established public policy and be 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"  In re Crown Auto Dealerships, Inc., 187 B.R. 1009, 1018 (M.D. Fla. Bankr. 1995)(quoting Urling v. Helms Exterminators, Inc., 468 So. 2d 451, 453 (Fla. 1st DCA 1985)).

Plaintiff has described the following conduct of Defendants, which occurred after July 1, 2005: SQD pursued a project to replace Plaintiff's existing products called "Project Black Diamond."  (Doc. No. 60, Ex. 28).  SQD was using EFI to replace the "XGA" series TVSS units that were made by Plaintiff.  (Doc. No. 60, Ex. 29).  The new EFI units were intended to have the same form, fit, and function as the current units produced by Plaintiff.  (Doc. No. 60, Ex. 29).  Thereafter, SQD substituted the new EFI product for open active quotes for Plaintiff's product.  (Doc. No. 60, Ex. 30). "SQD was able to make this nearly seamless substitution, because their final product [was] essentially" a clone of Plaintiff's product.  (Doc. No. 60, Ex. 31, ¶ 7).  The

substituted product was "nearly identical visually, as [was its] cutsheet verbiage and model numbering schemes." (Doc. No. 60, Ex. 31, ¶ 7). SQD continued to use shop drawings that were identified as Plaintiff's TVSS units, but which listed the EFI/SQD model numbers. (Doc. No. 60, Ex. 31, ¶ 8). As a result, customers did not know that they were not getting Plaintiff's product. (Doc. No. 60, Ex. 31). The Court finds that this is sufficient to create a genuine issue of material fact regarding whether SQD violated FDUPTA after July 1, 2001. Accordingly, the Court denies summary judgment on this issue.

## IV.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment (Doc. No. 54) is **GRANTED IN PART AND DENIED IN PART:**

(1)   The motion is **GRANTED**, and the Court grants summary judgment in favor of SQD, as to Count I (breach of fiduciary duty of a joint venturer);

(2)   The motion is **GRANTED**, and the Court grants partial summary judgment in favor of EFI, as to Count V (tortious interference with a business relationship) to the extent that Plaintiff claims that EFI tortiously interfered with Plaintiff and SQD's alleged joint venture relationship; and

(3)   The motion is **GRANTED**, and the Court grants partial summary judgment in favor of SQD, as to Count II for FDUPTA claims arising before July 1, 2001.

Otherwise, the motion is **DENIED.**

**DONE AND ORDERED** at Tampa, Florida, this 27th day of April, 2005.

SUSAN C. BUCKLEW
United States District Judge

Copies to:  Counsel of Record

15